IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

EDWARDYINE AYERS,

    Plaintiff,

vs.                                          No. 17-2631-SHL-dkv

KELVIN SMITH and
KTS SOLUTIONS,

    Defendants.
_____

REPORT AND RECOMMENDATION FOR PARTIAL *SUA SPONTE* DISMISSAL
and
TO ISSUE AND EFFECT SERVICE OF PROCESS FOR REMAINING DEFENDANT
_____

On August 29, 2017, the plaintiff, Edwardyine Ayers ("Ayers"), filed a *pro se* complaint against Kelvin Smith ("Smith") and KTS Solutions pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, as amended by the ADA Amendments Act, (ECF No. 1), accompanied by a motion seeking leave to proceed *in forma pauperis*, (ECF No. 2). On August 30, 2017, the court issued an order granting Ayers leave to proceed *in forma pauperis*. (ECF No. 7.) This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the reasons that follow, it is recommended that the

court dismiss Ayers's claim against Smith and that service be issued for KTS Solutions on the remaining claim.

I. PROPOSED FINDINGS OF FACT

Ayers filed her complaint on a court-supplied form styled "Complaint," in which she alleges that Smith and KTS Solutions violated the ADA by terminating her because of a pregnancy restriction and her Type 1 diabetes. (Compl., ECF No. 1.) Ayers alleges that she started working as a truck driver for KTS Solutions on June 7, 2013, after relaying "background and health" issues to the hiring manager Carlton Greer and Smith, the CEO. (*Id.* at 4.) In the complaint, Ayers describes a time during training when she became overheated and her trainers, who knew she had diabetes, checked on her. (*Id.* at 5.)

In July 2013, Ayers discovered she was pregnant. (*Id.* at 6.) KTS Solutions terminated Ayers's contract as a driver and hired her as a data entry clerk. (*Id.*) She worked as a data entry clerk until taking maternity leave in February 2014, during which time she had a C-section. (*Id.* at 6-7.) Ayers alleges that she called KTS Solutions when she had recovered from the pregnancy and was ready to come back to work. (*Id.* at 6.) In November 2014, Ayers returned to KTS Solutions with restrictions from her doctor on lifting and moving heavy objects. (*Id.*) Ayers alleges that when KTS Solutions received notice of the doctor's restrictions, they told her to go home

for a few weeks. (*Id.*)

KTS Solutions later called Ayers to come back to work "because staff was short." (*Id.* at 6-7.) Although Ayers was a data entry clerk before her maternity leave, she returned as a truck driver. (*Id.* at 7.) Ayers alleges that she was never officially hired back as a driver. (*Id.* at 10.) Ayers further alleges that KTS Solutions did not adhere to her medical restrictions because she still had to lift heavy objects. (*Id.* at 7.) According to Ayers, she came back to the office late one night after being assigned to a long trip. (*Id.*) Ayers called the office to ask someone to open the gate for her, but no one was available. (*Id.*) When Ayers opened the steel gate herself, she instantly started bleeding. (*Id.* at 7-8.)

Ayers alleges that she did not work much for a few days after that and that her manager Greg Jamerson ("Jamerson") instructed her to get a physical. (*Id.* at 8.) Her blood sugar was high at the time of her physical because she had just eaten. (*Id.*) After her physical examination, the nurse told Ayers that she could not drive for KTS Solutions. (*Id.* at 9.) Ayers called Smith but could barely tell him the news because she was so upset. (*Id.*) Although Smith told Ayers he would call her in a couple days, he never called back. (*Id.*) Ayers attempted to contact other people at KTS Solutions, none of whom answered. (*Id.* at 9.)

Ayers alleges that the discriminatory act, termination of her employment, happened on March 25, 2015. (*Id.* ¶ 6, 7.) When she did not hear back from anyone at KTS Solutions, Ayers contacted the EEOC to inquire about her rights. (*Id.* at 9-10.) The EEOC told Ayers they would investigate her claim. (*Id.* at 10.) Ayers filed a formal charge with the EEOC on March 29, 2015. (*Id.* ¶ 12.) When Smith received a letter from the EEOC, he called Ayers and told her to bring in all of her equipment. (*Id.* at 10.)

The EEOC sent a notice of right to sue, which Ayers received on "July 30 and August 29, 2017." (*Id.* ¶ 14; ECF No. 1-1.)[1] For relief, Ayers requests $25,000 in back pay, $1,900 for loss of her apartment, and $3,000 for loss of her car. (Compl. 12, ECF No. 1.)

## II. PROPOSED CONCLUSIONS OF LAW

---

[1] In her complaint, Ayers alleges both of these dates as the date she received her notice of right to sue from the EEOC, (compl. ¶ 14, ECF No. 1), and she attached the notice to the complaint, (ECF No. 1-1). The notice has an EEOC stamp indicating the letter was received August 29, 2017, and has a date mailed of May 30, 2017. (ECF No. 1-1.)

Under 42 U.S.C. § 2000e-5(f)(1), an employee seeking relief under Title VII must file a civil action within ninety days of receiving the notice of right to sue from the EEOC. *McGhee v. Disney Store*, 53 F. App'x 751, 752 (6th Cir. 2002). The Sixth Circuit held in *Hunter v. Stephenson Roofing, Inc.*, 790 F.2d 472, 475 (6th Cir. 1986) that the ninety day tolling period begins to run five days after the date the EEOC mails the right to sue letter. Although it is unclear what date Ayers actually received her notice of right to sue, she filed timely looking at any of the dates in her complaint or the notice of right to sue.

4

A.  28 U.S.C. § 1915(e)(2) Screening

Pursuant to Local Rule 4.1(b)(2), service will not issue in a *pro se* case where the *pro se* plaintiff has been granted leave to proceed *in forma pauperis* until the complaint has been screened under 28 U.S.C. § 1915(e)(2)(B). The clerk is authorized to issue summonses to *pro se* litigants only after that review is complete and an order of the court issues. This report and recommendation will constitute the court's screening of Ayers's complaint.

The court is required to screen *in forma pauperis* complaints and to dismiss any complaint, or any portion thereof, if the action:

>  (i)  is frivolous or malicious;
>
>  (ii) fails to state a claim on which relief may be granted; or
>
>  (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2).

B.  Standard of Review for Failure to State a Claim

In assessing whether Ayers's complaint states a claim on which relief may be granted, the standards under Rule 12(b)(6) of the Federal Rules of Civil Procedure, as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).

"Accepting all well-pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)(quoting *Iqbal*, 556 U.S. at 681)(alteration in original). "[P]leadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (internal quotation marks omitted). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011)("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading")(internal quotation marks

omitted); *Payne v. Sec'y of Treas.*, 73 F. App'x 836, 837 (6th Cir. 2003)(affirming *sua sponte* dismissal of complaint pursuant to Fed. R. Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Paynes's claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004)("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011)("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

C.  Ayers's Claim Against Smith

In the complaint, Ayers seeks to hold Smith, the CEO of KTS Solutions, liable under the ADA. (Compl., ECF No. 1.) The law is clear, however, that a supervisor, who does not qualify as an employer, cannot be held individually liable under the ADA. *Ford v. Frame*, 3 Fed. App'x 316, 318 (6th Cir. 2001)(citing *Hiler v. Brown*, 177 F.3d 542, 545-47 (6th Cir. 1999); *Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 808 n.1 (6th Cir. 1999))("[I]ndividual supervisors who do not independently

7

qualify under the statutory definition of employers may not be held personally liable in [] ADA cases . . . ."); *Wathen v. Gen. Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997)(holding that individual liability is prohibited under Title VII and similar statutory schemes and also noting that Title VII and the ADA are similar in this regard). The ADA defines employer as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person." 42 U.S.C. § 12111(5)(A).

It is not clear whether Ayers seeks to hold Smith individually liable under the ADA or is suing him as an employer in his capacity as CEO of KTS Solutions. Ayers does not state in the complaint that she is naming Smith as a defendant in his individual capacity, and she does not specifically allege that Smith was involved in the decision to fire her.[2] In addition, Ayers does not specify in the complaint whether KTS Solutions is a corporation, partnership, or other entity, which would affect liability of individual officers for company actions. *See, e.g.*, *Broad. Music, Inc. v. Meadowlake, Ltd.*, 754 F.3d 353, 355

---

[2]Ayers alleges that Smith did not answer her phone calls, (compl. 9, ECF No. 1), and that Smith asked Ayers to return her equipment, (*id.* at 10). However, even construing these allegations liberally, this does not provide sufficient indication that Smith was involved in firing Ayers – the action at issue in this case.

8

(6th Cir. 2014)("The legal structure of a business – corporation, limited liability company, partnership, what have you – may affect whether a defendant satisfies the test for vicarious liability in the first place."). On the EEOC right to sue letter Ayers attached to her complaint, the company is listed as "KTS Solutions, Inc.," a corporation. (ECF No. 1-1.) "[A]s a general rule, an individual stockholder or officer is not liable for his corporation's engagements . . . ." *Lexon Ins. Co. v. Naser*, 781 F.3d 335, 340 (6th Cir. 2015). To the extent Ayers purports to sue Smith as an employer in his capacity as CEO of KTS Solutions, allowing suit against KTS Solutions as well as against Smith would be duplicative. Because the ADA does not provide for individual liability, it is recommended that Ayers's ADA claim against Smith be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

## III. RECOMMENDATION

For the foregoing reasons, the court recommends that Ayers's claim against Smith individually be dismissed *sua sponte* for failure to state a claim on which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1915(e)(2)(ii).

As to Ayers's ADA claim against KTS Solutions, the court recommends that the Clerk be directed to issue process for KTS

Solutions and deliver that process to the marshal for service along with a copy of this Report and Recommendation; that service of the complaint, (ECF No. 1), be made on KTS Solutions pursuant to Rule 4(h)(1) of the Federal Rules of Civil Procedure;[3] and that all costs of service be advanced by the United States.

It is further recommended that Ayers be ordered to serve a copy of every document filed in this case on the attorney for KTS Solutions, make a certificate of service on every document filed, familiarize herself with the Federal Rules of Civil Procedure and this court's local rules,[4] promptly notify the Clerk of any change of address or extended absence, and be warned that failure to comply with these requirements, or any other order of the court, may result in the dismissal of her case without further notice.

Respectfully submitted this 5th day of October, 2017.

                                  s/Diane K. Vescovo
                                  DIANE K. VESCOVO
                                  CHIEF UNITED STATES MAGISTRATE JUDGE

---

[3] In her complaint, Ayers lists the following address for service of process for KTS Solutions:

    12733 Torrington Street
    Woodbridge, VA 22192

[4] A free copy of the Local Rules may be obtained from the Clerk. The Local Rules are also available on the court's website at www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.

NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.